UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PHILLIP SEALS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1983** |
| **SHELL OIL COMPANY, ET AL.** | **SECTION: "G" (4)** |

## ORDER

Before the Court is Plaintiff, Philip Seals', ("Seals") **Plaintiffs' Motion to Compel Production of Subpoenaed Documents from Danos & Curole, Inc. (R. Doc. 64)**, seeking an Order compelling non-party, Danos & Curole Marine Contractors, L.L.C.'s, ("Danos") to respond to discovery propounded on it. The motion is opposed (R. Doc. 70), and was heard by oral argument on Wednesday, May 22, 2013.

**I.      Background**

Seals has brought this personal injury claim under both the general maritime law of the United States, as well as the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(b). (R. Doc. 1). Seals alleges that on December 23, 2010, he was working on a crane on Defendant, Shell Offshore, Inc.'s, ("Shell") offshore drilling platform, PERDIDO, which was within the scope of his

employment with Danos. (R. Doc. 1, p. 3).[1] Seals alleges that although Danos assigned him to work as a crane mechanic, once on the PERDIDO he was instructed to work as a platform mechanic - a position for which he had no experience. *Id.* at 3. Seals alleges that he was ordered to climb into a "life capsule" suspended over the Gulf of Mexico, at which time he was instructed to unhook a "safety line." *Id.* at 3-4. During the process of unhooking the line he fell, sustaining personal injuries. *Id.* at 4.

Seals has argued that Shell and another defendant, Kiewit Offshore Services, Ltd., ("Kiewit") based on Shell's negligent acts and omissions, including the defective design of the PERDIDO. *Id.* at 5. Seals has brought claims against both Kiewit and Shell for past and future compensatory damages, attorney's fees, interests and costs. *Id.* at 6.

During the discovery in this case, the law firm of Reich, Album & Plunkett, ("RAP") purportedly attorneys of record for Danos, moved to quash a subpoena for records which it argued had been directed to Seals, and which contained six separate document requests. (R. Doc. 20). This motion was heard by oral argument on March 20, 2013. The Court's written Order, issued two days later on March 22, 2013, never reached the merits of Seals' subpoena requests. (R. Doc. 40).[2]

Instead, the Court found that "[d]iscussion of Requests Nos. 1, 2, and 3 is irrelevant because at oral argument, the parties represented that they had been produced by Danos to Seals' satisfaction. Therefore, the Court found that the motion was moot in this respect." (R. Doc. 40, p. 4). The Court further found that "[a]s to Request Nos. 4, 5, and 6, the parties . . . represented to the Court that they

---

[1]Seals has not sued Danos in the instant matter. Seals originally sued "Shell Oil Company," which was later terminated.

[2]The Court did, however, consider the merits of Danos' "privilege" objections as they pertained to Subpoena Request No. 4. *Id.* at 5.

had reached an agreement regarding production of the requested discovery, subject to the entry of a general Protective Order. As such, the parties agreed that all discovery issues arising in the instant motion had been disposed of, and the motion was now moot." *Id.*

Since the March 20, 2013 oral argument, and the Court's March 22, 2013 written memorialization of the parties' representations, the parties have failed to submit a joint protective order to the Court, which remains pending. Instead, over a month after the Court's written Order, on April 23, 2013, RAP, again purportedly representing Danos, finally moved for entry of a protective order, stating, *inter alia*, that communications between the parties had broken down. (R. Doc. 43).

Thereafter, on May 10, 2013, Seals submitted the instant motion, in which he now seeks to reach the merits of the six requests which Danos previously sought to quash, and compel a response from Danos thereto. The motion is opposed.

## II.  **Standard of Review**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556

3

F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Under Rule 45, "[s]erving a subpoena requires delivering a copy to the named person." Rule 45(b)(1). "If the subpoeana commands the production of documents . . . then before it is served, a notice must be served on each party." *Id.* "Proof of service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server." *Id.* at 45(b)(4).

"A party or attorney responsible for *issuing and serving* a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person *subject to* the subpoena." *Id.* at 45(c)(1) (emphasis added). Rule 45(b)(1) requires, *inter alia*, that "[s]erving a subpoena requires delivering a copy to the named person." *Id.* A Rule 45 motion must be quashed or modified where, *inter alia*, the subpoena "(iv) subjects a person to undue burden." *Id.* at 45(c)(3)(A). A court may also "order appearance or production under specified conditions if the serving party (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." *Id.* at 45(c)(3)(C).

**III.     Analysis**

    **A.     Scope of Current Motion**

This document is dated February 18, 2013, and carries a return date of March 11, 2013. *Id.* It requests that Danos produce certain documents referenced at "Exhibit A," which is also attached. *Id.* at 12. These documents are:

1. A certified copy of the complete personnel file of Phillip Seals . . . .

2. A copy of any and all master service agreements or contracts of whatever nature in effect on December 23, 2010 between [Danos] and [Shell], any Shell subsidiaries or related companies and/or Ensco, relating to the work performed by [Seals] aboard the PERDIDO on or about December 23, 2010.

3. A copy of any and all accident reports prepared by any person or entity concerning plaintiff's accident and injuries on December 23, 2010.

4. A copy of all invoices of any kind from [Danos] charging for work performed by [Seals] aboard the PERDIDO in 2010.

5. A copy of any and all e-mails, correspondence, fax or documents of whatever nature between [Danos] and [Shell], or and Shell subsidiaries or related companies, concerning the nature of the work [Danos] and/or [Seals] were to perform on the PERDIDO in 2010.

6. A copy of any and all e-mails, correspondence, fax or documents of whatever nature discussing plaintiff's injuries of December 23, 2012.

(R. Doc. 64, p. 12). However, there is no documentation of a service return attached to the subpoena.

The arguments made in connection with this motion center on whether the discovery sought by Danos is relevant, and whether the privilege objections which Danos has raised in connection with the same are proper. *See* (R. Docs. 64, 70). These arguments are of no moment, because Seals has failed to furnish the Court with any evidence that he served "notice on each party" prior to his document request in compliance with Rule 45(b)(1), attached evidence of a service return to his

5

"subpoena" in compliance with Rule 45(b)(4), or provide any other adequate indicia that he properly complied with the requirements of Rule 45. *See* (R. Doc. 64, pp. 11-13).

For example, under Rule 45, "proper service requires . . . personal delivery of the subpoena." *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003). "Under the plain language of the rule, as well as Fifth Circuit precedent, service is improper if the person himself is not served with a copy of the subpoena." *Weiss v. Allstate Insurance Co.*, 512 F. Supp. 2d 463, 466 (E.D. La. 2007) (citing *Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968) (finding that service of subpoena on party's attorney, instead of the party, "renders such service a nullity."); *Omikoshi Japanese Restaurant v. Scottsdale Insurance Co.*, No. 08-3657, 2008 WL 4829583, at *1 (E.D. La. Nov. 5, 2008) (applying personal service requirement to subpoena for records propounded upon a non-party).

Here, the Court noted during oral argument that Seals had not attached evidence of the subpoena return to his motion, in contravention of Rule 45(b)(4). In light of the Fifth Circuit's stringent interpretation of the Rule 45 service requirements, the Court has no basis to conclude that the subpoena was actually personally served upon Danos in accordance with Fifth Circuit guidance. Because Danos was never "subject to" the subpoena, it must be denied. At oral argument the Court denied Seals' motion from the bench, and herein converts that oral order into a written finding.[3]

---

[3] Finally, although it does not impact the disposition of the motion, the Court also notes that during the hearing, Robert Reich, ("Reich") who is enrolled as an attorney of record for Shell in this case and who had made arguments on behalf of Shell on May 22, 2013 in connection with another motion (R. Doc. 63), stated that "[i]n this instance, I'm appearing on behalf of Danos, which is not a party." Reich also stated that he had "probably" been retained by Danos, although he also admitted that Shell and Danos' interests were not aligned in this case. Reich explained that "What happened in this case . . . is that Shell was sued. Shell tendered its defense to Danos and to the Gray Insurance Company. Danos does not owe a defense to Shell under the Oilfield Indemnity Act . . . nor does Gray." Reich stated that he had been retained by the Gray Insurance Company, which was Danos' insurer, but that he had not been "retained on behalf of Danos, because Danos is not a party." (R. Doc. 84, pp. 7-9). The Court notes that this is the first time during these proceedings that it had any indication that RAP did not properly represent Danos, or that a potential conflict between Danos and Shell might exist.

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, Philip Seals', ("Seals") **Plaintiffs' Motion to Compel Production of Subpoenaed Documents from Danos & Curole, Inc. (R. Doc. 64)** is **DENIED**.

New Orleans, Louisiana, this 17th day of June 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**